**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHARLES BOCOCK (2018-0503001),** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 19 C 3877** |
| **v.** | ) | |
| | ) | **Judge Jorge L. Alonso** |
| **THOMAS J. DART,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Charles Bocock, brings this suit against defendant, Cook County Sheriff Thomas J. Dart, pursuant to 42 U.S.C. § 1983, claiming that his First Amendment right to newspaper access and Fourteenth Amendment right to due process were violated during his detention in Cook County Jail. The parties have filed cross-motions for summary judgment. For the following reasons, the motions are denied.

**BACKGROUND**

The parties have submitted statements of material facts and responses pursuant to Northern District of Illinois Local Rule 56.1. Based on these statements and responses, the following facts are undisputed or must be assumed to be true for purposes of the present motions.

Plaintiff was detained in various units within Cook County Jail from May 2, 2018, to July 17, 2021, and then again from June 15, 2022, to November 7, 2022. As the Sheriff of Cook County, defendant is the official responsible for the operation of Cook County Jail.

Jail policy prohibits inmates from subscribing to daily newspapers. They are permitted to receive newspaper clippings via mail, subject to inspection, and "[a] local daily newspaper in general circulation . . . shall be made available to interested inmates" during scheduled recreation

time. (Pl.'s LR 56.1(b)(2) ¶ 9, ECF No. 142; Def.'s LR 56.1(b)(2) Resp. ¶ 60, ECF No. 145.) In 2022, the Jail's practice was for its mail room supervisor, Ronald Ferguson, to pick up a bundle of newspapers each morning for mail clerks to deliver, along with inmate mail, to the security post of each division.

Plaintiff claims, however, that whenever he asked correctional officers for a newspaper, his requests were refused. He filed numerous grievances in 2018, 2019, and 2022 concerning his lack of daily newspaper access. At one point, the Jail responded to an August 2019 grievance by telling plaintiff, "your concern has been addressed and newspapers are distributed on scheduled recreation days," but, plaintiff replied, "no newspapers [were] ever seen in 'recreation areas.'" (Def.'s LR 56.1(b)(2) Resp. ¶ 79, ECF No. 145.) On rare occasions, plaintiff was able to borrow a copy of a newspaper or part of a newspaper, including the Chicago Tribune, Chicago Sun-Times, and USA Today, from other inmates. (Pl.'s LR 56.1(b)(2) Resp. ¶¶ 31-32, ECF No. 142.)

Plaintiff received mail dozens of times during his detention. On at least two occasions, mail addressed to plaintiff arrived at Cook County Jail, only to be returned to sender by the Jail's mailroom staff. On the first such occasion, a package from a charity known as "Prisoners Abroad" arrived for plaintiff on January 3, 2019, but plaintiff received only a "Notice of Returned Mail" form, dated January 13, 2019. This form stated that the package was returned to sender because "newspaper [is] not allowed" at the Jail. (*Id.* ¶¶ 28-30.) Plaintiff later sent a letter to the charity to ask if it had sent a package and what it contained, and the charity responded that it had sent him a Guardian newspaper and some books. (*Id.* ¶ 37.)

Plaintiff submitted a grievance, dated April 10, 2019, related to the Jail's mail process. He stated that the Jail's procedure for dealing with mail violated his due process rights because the

Jail immediately returned any items that it deemed to violate its rules for incoming mail, without allowing anyone other than the original processing person to verify and affirm the violation. (*Id.* ¶ 56.) The Jail responded that plaintiff must "follow the rules & regulations in regards to mail," and plaintiff replied by reiterating his position that due process prohibited the Jail from returning mail to sender without allowing someone other than the person who opened the mail and identified the alleged violation to verify and affirm it. (*Id.* ¶¶ 57-58.) The Jail responded, "contraband mail will be returned to sender. Original response stands." (*Id.* ¶ 59.)

On July 14, 2020, the Jail received a package, addressed to plaintiff, from "Magazine Café." (*Id.* ¶ 41.) The package was returned to sender the next day. (*Id.* ¶ 42.) The package contained an Esquire magazine, and, according to Jail records, it was returned to sender because the magazine contained a "nude picture & picture of money inside." (*Id.* ¶ 44.) Plaintiff received a Notice of Returned Mail informing him of the same. (*Id.* ¶¶ 45-46.)

The Jail's official policy provides that mail found to contain contraband may be returned to sender, but inmates shall be "notified in writing whenever their mail is returned to the sender and be provided the reason for the return" as well as "means to appeal the denial." (*Id.* ¶ 6.) The Jail's Notice of Returned Mail form describes the appeals process, which requires the inmate to complete an Inmate Grievance form. (*Id.* ¶¶ 11-12.)

Acording to Mr. Ferguson, who plaintiff deposed as the Jail's Federal Rule of Civil Procedure 30(b)(6) witness, the Jail's practice is to have clerks in the mailroom open packages addressed to inmates and review them for contraband. (*Id.* ¶ 14.) If a clerk determines that the package contains contraband, the item is sealed back up and returned to sender immediately. (*Id.*) The clerk fills out a Notice of Returned Mail form, specifying the reason for the return, and the

3

form is distributed to the inmate. The clerk also sees that the information is entered into the Jail's "CCOMS" database. If the inmate files a grievance to appeal returned mail, the employee who handles the grievance uses the information in CCOMS to resolve the matter. (*Id.* ¶ 24.)

## ANALYSIS

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). A genuine dispute is one that could change the outcome of the suit and is supported by evidence sufficient to allow a reasonable jury to return a favorable verdict for the non-moving party. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010). The Court applies these "ordinary standards for summary judgment" in the same way whether one or both parties move for summary judgment; when the parties file cross-motions, the Court treats each motion individually, "constru[ing] all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017); *see Reeder v. Carter*, 339 F. Supp. 3d 860, 869-70 (S.D. Ind. 2018).

"Section 1983 creates a species of tort liability," *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017) (internal quotation marks omitted), against any "person" who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any

rights, privileges, or immunities secured by the Constitution," 42 U.S.C. § 1983. A local government official such as Sheriff Dart may be sued under § 1983 either in his "official capacity or in his individual, or personal, capacity." *Foy v. City of Chicago*, No. 15 C 3720, 2016 WL 2770880, at *3 (N.D. Ill. May 12, 2016) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Plaintiff is asserting only official-capacity claims in this case. (*See* Pl.'s Mem. in Opp'n at 4, ECF No. 141 (citing Jan. 28, 2020 Order at 3, ECF No. 15).)

An official-capacity suit is essentially "another way of pleading an action against an entity of which an officer is an agent," and it is to be treated "in all respects other than name . . . as a suit against the entity." *Graham*, 473 U.S. at 165-66 (internal quotation marks omitted). "For Sheriff [Thomas] Dart, as an elected official with decision-making authority over the jail[,] . . . an official capacity claim against him is considered to be one against the Sheriff's Office." *Hampton v. Hart*, No. 09 C 6269, 2011 WL 2837407, at *6 (N.D. Ill. July 18, 2011); *see Scott-Pitts v. Cty. of Cook*, No. 18 C 432, 2018 WL 3626991, at *3 (N.D. Ill. July 30, 2018) (citing *Franklin v. Zaruba*, 150 F.3d 682, 686 (7th Cir. 1998) (explaining that "§ 1983 suits against sheriffs in their official capacities are in reality suits against the county sheriff's department")); *see also Ebrahime v. Dart*, No. 09 C 7825, 2010 WL 4932655, at *5-6 (N.D. Ill. Nov. 30, 2010) ("The Cook County Jail and the Cook County Department of Corrections are solely under the supervision and control of the Sheriff of Cook County."); *Maldonado v. Garcia*, No. 13 C 8981, 2015 WL 4483975, at *4 (N.D. Ill. July 22, 2015) ("In Illinois, sheriffs have final policymaking authority over jail operations.") (internal quotation marks omitted).

A local government entity such as the Cook County Sheriff's Office may be found liable under § 1983, as interpreted in *Monell v. Department of Social Services of City of New York*, 436

U.S. 658, 690-91 (1978), and its progeny, if an "official policy, widespread custom, or action by an official with policy-making authority was the moving force behind [the plaintiff's] constitutional injury." *Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016) (internal quotation marks omitted). "An unconstitutional policy can include both implicit policies as well as a gap in expressed policies." *Id.* "Inaction can also give rise to liability if it reflects the municipality's 'conscious decision not to take action.'" *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022) (quoting *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017) (en banc)).

To establish municipal action via a custom or widespread practice that has "not received formal approval through the body's official decisionmaking channels," *Monell*, 436 U.S. at 690-91, plaintiff must "introduce evidence" sufficient to demonstrate that "acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Dixon v. Cook County*, 819 F.3d 343, 348 (7th Cir. 2016). This is often done via evidence of sufficiently numerous examples of "unlawful activity" to show that the practice was so "widespread" and "pervasive" as to indicate acquiescence by policymakers. *See Phelan v. Cook Cnty*, 463 F.3d 773, 790 (7th Cir. 2006), *overruled by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016).

Where the plaintiff's claim is that municipal action or inaction, though facially constitutional, caused municipal employees to violate the plaintiff's constitutional rights, the plaintiff's proof must satisfy "rigorous standards of culpability and causation . . . to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997); *see id.* at 403 (explaining that, in § 1983 actions, municipalities may not be held liable under a theory of *respondeat superior*, and citing cases ). In such situations, the "plaintiff must demonstrate that the municipality itself acted with

'deliberate indifference' to his constitutional rights." *Bohanon*, 46 F.4th at 675 (quoting *Brown*, 520 U.S. at 407). This means proving "that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021). Stated differently, if the allegedly unlawful municipal action is a "gap" in policy, the plaintiff must show that the municipality "has notice that its program will cause constitutional violations." *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 379 (7th Cir. 2020) (en banc) (quoting *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011)). "Typically notice is established by 'a prior pattern of similar constitutional violations.'" *Bohanon*, 46 F.4th at 676-77 (quoting *J.K.J.*, 960 F.3d at 380). Where the evidence falls short of establishing a pattern of incidents, "notice can be inferred from the obviousness of the consequences of failing to act," but only if the "risks of municipal inaction [are] blatantly obvious." *Id.* at 677 (citing cases).

Plaintiff seeks summary judgment on two claims of constitutional deprivations arising out of his pretrial detention in Cook County Jail. First, he claims that he was deprived of his First Amendment right to newspaper access. Second, he claims that he was deprived of his Fourteenth Amendment due process right to meaningfully appeal the Jail's decision to return mail addressed to him. Defendants argue that they are entitled to summary judgment on both claims because the Cook County Jail's newspaper policy is constitutional and plaintiff had sufficient opportunities to challenge the Jail's rejections of his mail.

## I.   First Amendment Claim of Access to Newspapers

"Freedom of speech is not merely freedom to speak; it is also freedom to read." *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638 (7th Cir. 2005). "[I]mprisonment does not

automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment," although "the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere." *Beard v. Banks*, 548 U.S. 521, 528 (2006). Courts must "accord substantial deference to the professional judgment of prison administrators," who may have legitimate reasons for imposing restrictions on newspaper access. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

"When a prison regulation impinges on inmates' constitutional rights," including First Amendment rights, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). More specifically, determining whether the regulation is constitutional depends on an assessment of four factors: "[1] whether the regulation is rationally related to a legitimate and neutral governmental objective; [2] whether there are alternative means of exercising the right that remain open to the inmate; [3] what impact an accommodation of the asserted right will have on guards and other inmates; and [4] whether there are obvious alternatives to the regulation that show that it is an exaggerated response to prison concerns." *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004) (citing *Turner*, 482 U.S. at 89-91); *see Beard*, 548 U.S. at 530 (explaining that a prison policy prohibiting access to newspapers in a unit for the prison's most "difficult prisoners" was constitutionally justified, under the *Turner* factors, by the need to provide "increased incentives for better prison behavior").

The Court assumes, and defendant apparently does not dispute, that the Jail must provide at least some newspaper access to inmates, as a general matter. Illustrating this point are two recent cases decided by other judges in this district. The first is *Koger v. Dart*, 114 F. Supp. 3d 572, 579-84 (N.D. Ill. 2015), in which the court weighed the above factors and ruled that Cook County Jail's

8

then-absolute, unconditional newspaper ban was unconstitutional. The court explained that there was no true alternative means of exercising the First Amendment right at issue, which, the Supreme Court has suggested, is "not simply a general right to read or find out about the news" but "a right to read newspapers," which provide a "'depth and diversity of coverage'" that other media do not. *Id.* at 581 (citing *Beard*, 548 U.S. at 526, 532, and quoting *Thomas v. Leslie*, 176 F.3d 489, 1999 WL 281416, at *8 (10th Cir. 1999) (unpublished table decision)). The court concluded that the absolute ban on newspapers did not pass constitutional muster because, among other reasons, "permitting newspapers in libraries and day rooms, but not individual cells . . . would accommodate the right while completely addressing the jail's [stated] concerns" about reducing flammable and unsanitary clutter and limiting inflammatory information about other inmates' charges and gang activity. *Id.* at 583.

The second illustrative case is *Gonzalez v. Josephson*, No. 14-CV-4366, 2019 WL 1013737, at *21-22 (N.D. Ill. Mar. 4, 2019). At issue there was the Will County Jail's policy of prohibiting inmates from subscribing to newspapers, in order to prevent cells from becoming cluttered with flammable and inflammatory material, but "provid[ing] a copy of *USA Today* to every housing unit every day." *Id.* The court ruled that this policy survived constitutional scrutiny, reasoning that the daily copy of *USA Today* provided to each housing unit is "what distinguishe[d] this case from *Koger v. Dart*" because it allowed inmates "access to a comprehensive and up-to-date news source." 2019 WL 1013737, at *21-22.

In accord with these decisions, defendant's official policy is to prohibit newspaper subscriptions, but distribute newspapers to the various divisions of the Jail so that detainees have access to them during scheduled recreation time. Plaintiff claims, however, that whenever he asked

9

for a newspaper, he was refused, and he never actually had access to a newspaper, unless he was able to borrow a copy from an inmate. He filed numerous grievances on the subject, while housed in various units at various times, to no avail. Therefore, he claims, there was a *de facto* policy, widespread practice, or custom, of denying inmates access to a daily newspaper. Defendant does not dispute these facts by pointing to any contravening evidence, apart from noting that, on rare occasions, plaintiff was able to borrow a copy of a newspaper. But these occasions were *very* rare, "on average, once per year" (Pl.'s LR 56.1(b)(2) Resp. ¶ 32), so they hardly establish that the Jail staff was meeting its obligation to permit inmates regular access to a "comprehensive and up-to-date news source." *Gonzalez*, 2019 WL 1013737, at *22.

Defendant contends that, even if true, these facts do not suffice to establish the prerequisites for municipal liability under *Monell.* In particular, defendant argues that plaintiff has not relied on evidence that other inmates were similarly deprived of newspaper access, so, according to defendant, plaintiff cannot demonstrate that his constitutional deprivation was caused by a widespread practice. And without evidence that the practice was widespread, defendant maintains, there is no sufficient basis for any finding of municipal fault; that is, no jury could conclude that the circumstances were such that the "risks of municipal inaction" were "blatantly obvious" to Sheriff Dart. *See Bohanon*, 46 F.4th at 677.

This argument does not quite hit the mark. First, under the circumstances of this case, the Court fails to see why plaintiff must demonstrate that other inmates were similarly frustrated by the lack of newspaper access to establish a widespread practice. "Instead, it is enough [for him] to present competent evidence tending to show a general pattern of repeated behavior (*i.e.,* something greater than a mere isolated event)." *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006); *see*

10

*Thomas v. Sheahan*, 499 F. Supp. 2d 1062, 1095 (N.D. Ill. 2007) (explaining, at summary judgment, that "Plaintiff is not required to show that Cook County's alleged unconstitutional widespread practices actually caused pain and suffering to other inmates . . . . Instead, it is enough that Plaintiff provides competent evidence tending to show that the alleged practices were, indeed, widespread . . . . [and] truly evince the existence of a policy.") (citing *Davis*, 452 F.3d at 695, and *Phelan*, 463 F.3d at 789-90); *see also Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303-04 (7th Cir. 2010) (affirming the denial of Cook County's motion for judgment as a matter of law on this point in *Thomas v. Sheahan*, 556 F. Supp. 2d 861, 871 (N.D. Ill. 2008), because the plaintiff "presented evidence that the jail officers had a [*de facto*] policy of failing to review medical requests," *id.*). Plaintiff testified that he was never provided with a newspaper and never saw any newspapers provided to inmates during scheduled recreation, despite filing a grievance in 2018, three in early 2019, one in August 2019, and several more spanning a period of approximately one month in summer 2022, while housed in different units. This suffices to demonstrate a cognizable pattern. "As in *Thomas*, the evidence here goes beyond an isolated act of an individual employee." *Thompson v. Taylor*, No. 13 C 6946, 2016 WL 5080484, at *8 (N.D. Ill. Sept. 20, 2016). There is "evidence of gaps in the policies and practices that led to the [constitutional violation at issue], and a jury could infer that the violation reflects a widespread issue." *Id.* (citing *Daniel*, 833 F.3d at 735).

However, this "series of alleged bad acts is insufficient, by itself, to establish *Monell* liability . . . . Plaintiffs must also provide evidence that the circumstances 'brought the risk at issue to the attention of' Sheriff Dart." *Pindak v. Dart*, 125 F. Supp. 3d 720, 762 (N.D. Ill. 2015) (quoting *Hahn v. Walsh*, 762 F.3d 617, 637 (7th Cir. 2014)). There is no direct evidence that he was aware

11

that inmates were not being provided with newspapers, contrary to the express policy, and, in a situation like this, *Monell* liability only attaches if he acted, or failed to act, with "deliberate indifference as to [the] known or obvious consequences." *Brown*, 520 U.S. at 407 (internal quotation marks omitted).

Plaintiff's testimony establishes a troubling pattern of incidents in which he was refused newspaper access, despite properly seeking it, properly grieving the refusal, and even filing this lawsuit, which was already pending at the time of the 2022 grievances. It is hard to see what more he could have done to bring the issue to the Sheriff's attention. And the *Koger v. Dart* decision in 2015 provides critical context in which to assess defendant's actions or lack thereof. After the issuance of that decision, Sheriff Dart was on notice of the fact that inmates are entitled to reasonable newspaper access, and Jail policy changed as a result—but defendant has adduced no evidence that he did anything to implement that policy and actually provide newspaper access. A reasonable juror could infer from the dearth of evidence on that point that Sheriff Dart did nothing to ensure the implementation of the new policy and that it was "blatantly obvious" that "municipal inaction" in that regard carried substantial "risks" of continuing constitutional violations. *Bohanon*, 46 F.4th at 677; *see Glisson*, 849 F.3d at 380-81 (reversing summary judgment for municipal actor on *Monell* claim because a "jury could conclude that [the municipal actor] . . . made 'a deliberate choice to follow a course of action . . . from among various alternatives' to do nothing" or "adopted a policy of inaction") (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)) (other internal quotation marks omitted); *Gasaway v. Vigo Cnty. Sheriff's Dep't*, 672 F. Supp. 3d 651, 660-61 (S.D. Ind. 2023) ("To the extent that the Sheriff's Department had a policy . . . a jury could conclude that it was so ineffectual as to evince deliberate indifference.") (citing *Glisson*, 849 F.3d

12

at 382); *Pindak*, 125 F. Supp. 3d at 764. Because a reasonable juror could conclude that the Sheriff's action or inaction evinced deliberate indifference as to plaintiff's constitutional rights, and that the Sheriff's action or inaction caused the infringement of his constitutional rights, summary judgment for defendant is inappropriate.

But these are not the only conclusions that reasonable jurors might draw from the facts in this case. Reasonable jurors could also conclude that it was not obvious to defendant that he could not trust Jail staff with the simple task of providing newspapers to inmates during scheduled recreation time, and their failure to do so was not down to his "conscious decision" but merely their own negligence as "subordinate actors," of which he was unaware. *Glisson*, 849 F.3d at 381; *see Hahn v. Walsh*, 762 F.3d 617, 638 (7th Cir. 2014); *Holmes v. Sheahan*, 930 F.2d 1196, 1201–02 (7th Cir. 1991) ("[W]ithout more evidence pointing to deficiencies in these procedures, [the plaintiff's] story suggests a problem with personnel and the implementation of policy . . . but not a problem with County policy itself.").

In *Bohanon*, on which defendant heavily relies, the district court denied the municipal defendant's motion for summary judgment, concluding that there was a genuine issue of material fact as to whether the defendant made a "deliberate choice" to impose an inadequate policy, reflecting deliberate indifference to an unjustifiable risk that the policy would result in violations of the constitutional rights of citizens like the plaintiff. *Bohanon v. Reiger*, No. 16 CV 2117, 2018 WL 447714, at *10 (S.D. Ind. Jan. 17, 2018) (citing *Glisson*, 849 F.3d at 382). Following trial, however, the district court granted the defendant's motion for judgment as a matter of law, explaining that there had been no evidence of a prior pattern of constitutional violations or that "the unconstitutional consequences of failing to act were 'so patently obvious'" that the defendant

could be held liable without one, and the Seventh Circuit affirmed. *Bohanon v. City of Indianapolis*, 491 F. Supp. 3d 367, 385 (S.D. Ind. 2020), *aff'd,* 46 F.4th 669 (7th Cir. 2022). This case may play out in the same way. But in borderline cases that may depend on how the evidence comes in at trial and on what inferences a factfinder is willing to draw, setting the case for trial is a "better course" of action than choosing between competing motions for summary judgment. *See Gabor v. Dozier*, No. 15 C 8508, 2021 WL 5882205, at *10 (N.D. Ill. Dec. 13, 2021) (denying summary judgment on "borderline" *Monell* claim because "[t]he Supreme Court has admonished trial courts that they should not 'act other than with caution in granting summary judgment,' and they 'may deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Therefore, both parties' motions for summary judgment are denied as to this issue.

## II.    Fourteenth Amendment Claim of Deprivation of Due Process

Inmates have a liberty interest, protected by the due process clause of the Fourteenth Amendment, in uncensored communications by mail.[1] *Bonner v. Outlaw*, 552 F.3d 673, 676-77 (8th Cir. 2009) (citing *Procunier v. Martinez*, 416 U.S. 396, 417 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)). "Due process requires that the decision to censor inmate mail must be accompanied by 'minimum procedural safeguards.'" *Miller v. Downey*, 915 F.3d 460, 466 (7th Cir. 2019) (quoting *Martinez*, 416 U.S. at 417). "This standard has generally required officials to provide inmates with notice and an opportunity to object to a

---

[1] Defendant sometimes characterizes the due process interest at stake in this case as a property interest, but the Court does not understand plaintiff to be complaining about deprivation of property, as opposed to liberty, in this case.

14

confiscation of their mail." *Miller*, 915 F.3d at 466 (citing *Martinez*, 416 U.S. at 418, and *Perry v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 1359, 1367 (11th Cir. 2011) (applying this standard)).

It is axiomatic that "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (cleaned up). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (internal quotation marks omitted). In *Martinez*, the Supreme Court "affirmed the district court's requirement of two-level review: 'complaints [about censorship of mail shall] be referred to a prison official other than the person who originally disapproved the correspondence.'" *Krug v. Lutz*, 329 F.3d 692, 697 (9th Cir. 2003) (quoting *Martinez*, 416 U.S. at 418-19). The Supreme Court did not hold that the right to appeal to an official other than the original censor is constitutionally required in all cases, stating only that the district court's imposition of that requirement was not "unduly burdensome." *Id.* But some lower courts have insisted that "the right to appeal the exclusion of incoming publications to a prison official other than the one who made the initial exclusion is . . . necessary" to meeting the minimum-procedural-safeguards requirement. *Krug*, 329 F.3d at 698; *see id.* at 698 n.6 (citing cases).

Plaintiff argues that the Jail's appeal process is constitutionally deficient to the extent that it consists of no more than a Jail employee comparing what is written on the grievance form, which will necessarily be based on what the receiving clerk wrote on the Notice of Returned Mail, to the data that the same clerk input into CCOMS. This is not a meaningful review process, according to plaintiff, because at the time of the second-level review, the mail in question has already left the premises, so the reviewing party has little more than the fact of the original decision to inform his review.

At least two district courts would agree, having employed this very reasoning in concluding that prison administrators violated inmates' due process rights by failing to provide a meaningful appeal process, where the process in question permitted mail to be returned to sender before any appeal was complete. *See Jordan v. Sosa*, 577 F. Supp. 2d 1162, 1169, 1172–73 (D. Colo. 2008); *Prison Legal News v. Stolle*, 319 F. Supp. 3d 830, 852–53 (E.D. Va. 2015); *contra McGann v. Stock*, 884 F.2d 582, at *4 (9th Cir. 1989) (unpublished table decision). The Court finds the reasoning of these district court decisions persuasive, and defendant has not made any argument to convince the Court otherwise.

The closest defendant comes is to argue that retaining the confiscated mail items until after review of any grievance would be unduly burdensome. The Court is not persuaded. Notably, in *Jordan v. Sosa*, the district court was generally receptive to arguments about unduly burdening prison authorities, 577 F. Supp. at 1171, but, nevertheless, it considered prison authorities duty-bound to retain a copy of withheld mail to allow for a meaningful review of their decision, notwithstanding any burden. *Id.* at 1172-73; *see id.* at 1169 (noting that the circumstances of that case "graphically illustrated" the "problem" that can arise when an inmate attempts to challenge a decision about mail that has already been returned to sender). In this case, the Court does not need to go so far as to hold that the Jail was required to retain the package in full, nor is the record sufficiently developed to support such a holding. But at a minimum, the Jail was required to document its decision well enough to permit a meaningful review by someone other than the receiving mail clerk. Defendant has admitted that this was not its practice, and defendant cites no evidence to suggest that doing so would have been an undue burden, nor is any undue burden apparent. Indeed, in *Prison Legal News v. Stolle*, the sheriff of the jurisdiction in question was

16

"commended" by the district court for "swiftly rectif[ying]" the "apparent infirmities with the . . . policy" that "came to light during the pendency" of that case by instituting a new policy to provide that "seized mail items are to be retained for 30 days to allow for their review in the event of a challenge to the seizure." 319 F. Supp. 3d at 853, 853 n.21. If the Virginia Beach Sheriff's Office can do it, one would expect the Cook County Sheriff's Office to be able to do it, too. And defendant's citation to *Orozco v. Dart*, 64 F.4th 806, 820 (7th Cir. 2023), does not aid him, as the portion he cites deals with the question of proper notice prior to sanctions for an inmate's own actions, as opposed to the question of providing a meaningful opportunity to be heard on a matter outside the inmate's control, namely, the censoring of incoming mail that the inmate has never seen and may not know to expect.

Defendant also makes similar arguments to those he made in relation to the newspaper policy issue, contending that, regardless of whether plaintiff can prove that he suffered a constitutional deprivation, he cannot prevail on a *Monell* theory because there is no evidence to show that other inmates were similarly frustrated by the process or otherwise show that the constitutional deprivation was due to a widespread practice. Plaintiff deposed Ronald Ferguson, the Jail's mail room supervisor, pursuant to Rule 30(b)(6), and the witness specifically testified that the Jail's practice was to (1) immediately return any package that did not comply with Jail rules for incoming mail, (2) state the reasons for the return on a Notice of Returned Mail and in the CCOMS database, and (3) resolve any grievance concerning the returned mail based only on the minimal information entered into CCOMS. As defendant admits (Def.'s Ex. R, ECF No. 145-1), plaintiff asked for a witness knowledgeable about the Jail's procedures and practices for these grievances, and defendant supplied this witness, who testified that it was the Jail's practice to

17

return mail immediately, before any grievance was resolved, without information sufficient to determine whether the original decision was erroneous. The Court fails to see why a reasonable factfinder could not rely on this testimony to conclude that this was the Jail's practice; that was the whole point for which the testimony was sought and for which defendant offered it. And the municipal fault issue does not present the same problem on this issue that it presents for the First Amendment newspaper issue because "[m]unicipal fault is easily established when a municipality acts . . . in a way that facially violates a right." *Bohanon*, 46 F.4th at 675 (citing *Brown*, 520 U.S. at 404-05).

The issue, therefore, reduces to whether the mailroom policy truly represents municipal action; that is, "is the action about which the plaintiff is complaining one of the institution itself, or is it merely one undertaken by a subordinate actor?" *Glisson*, 849 F.3d at 381. For the reasons set forth above, the Court has no trouble concluding that plaintiff survives defendant's motion for summary judgment by demonstrating a genuine factual dispute on that issue. Whether the facts demonstrate that plaintiff is entitled to judgment as a matter of law, however, is another matter. There are gaps in the evidence that require the factfinder to make inferences, and the issue is not well-suited to summary judgment. *See Gabor*, 2021 WL 5882205, at *10 (citing *Anderson*, 477 U.S. at 248); *see also Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) ("Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."); *El v. Se. Pennsylvania Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007) ("Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will."). Plaintiff has adduced sufficient evidence to support a

18

jury verdict in his favor, but the evidence is not so one-sided or conclusive that any reasonable juror would be not only warranted but *compelled* to find in his favor at trial.

Finally, defendant argues that plaintiff has suffered no deprivation of due process because various post-deprivation remedies are available to him, including the right to file a tort action under state law. This argument is out of place in this case. The general rule requiring pre-deprivation due process is relaxed only in cases of "random, unauthorized" misconduct, as a "'rare exception to due process norms.'" *Bradley v. Vill. of Univ. Park, Illinois*, 929 F.3d 875, 886 (7th Cir. 2019) (quoting *Brunson v. Murray*, 843 F.3d 698, 715 n. 9 (7th Cir. 2016)); *see Zinerman v. Burch*, 494 U.S. 113, 127-28 (1990). The exception does not apply if the deprivation at issue is "predictable." *See Easter House v. Felder*, 910 F.2d 1387, 1400-02 (7th Cir. 1990) (en banc) (citing *Zinerman*, 494 U.S. at 136-37). Plaintiff does not claim to have been harmed by random, unauthorized misconduct; he claims that the Jail's standard practice deprives him of his right to uncensored mail without the requisite minimum procedural safeguards, including a meaningful opportunity to appeal the initial decision to an official who could take a fresh look at the matter. Defendant is not entitled to summary judgment on this basis.

The Court concludes with a brief comment on the remedies available here. Plaintiff concedes that this case is moot as to some of the relief he originally sought, especially injunctive relief, because he is no longer in Jail custody. He now seeks only nominal damages and a declaratory judgment, and to the extent he proves his case, "he is entitled to both of these forms of relief." *Koger*, 114 F. Supp. 3d at 584. Given those relatively low stakes, however, the Court trusts that the parties will diligently exhaust all settlement possibilities before committing scarce public resources to a trial on this matter.

19

## <u>CONCLUSION</u>

For the foregoing reasons, the motions for summary judgement [132] [136] are denied. The parties shall meet and confer regarding the possibility of settlement and potential trial dates. They shall file a joint status report by April 26, 2024. A status hearing is set for May 1, 2024.

**SO ORDERED.**                                         **ENTERED**: March 29, 2024

_____

**HON. JORGE L. ALONSO**
**United States District Judge**